[Crim. No. 1388.   Fourth Dist.   Apr. 10, 1959.]

THE PEOPLE, Respondent, v. RONALD WILLIAM POND, Appellant.

Thomas Whelan for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Respondent.

MUSSELL, J.—In count one of an information appellant was charged with the crime of burglary (Pen. Code, § 459) of a house and building occupied by Jesse A. Hoyt at 419 Church Street, in Chula Vista. In counts two, three and four he was charged with the crime of robbery (Pen. Code, § 211) and it was alleged that on or about February 1, 1958, he did wilfully, unlawfully, feloniously and by means of force and fear and against the will of Jesse A. Hoyt, Fred L. Hoffa and H. A. Dunbar take from the persons, possession and immediate presence of said Jesse A. Hoyt, Fred L. Hoffa and H. A. Dunbar $4.00, lawful money of the United States of America, the personal property of said Jesse A. Hoyt; $15, lawful money of the United States of America, the personal property of said Fred L. Hoffa; and $78, lawful money of the United States, the personal property of said H. A. Dunbar. In count five he was charged with the crime of assault with a deadly weapon (Pen. Code, § 245) and it was alleged that on or about February 1, 1958, he assaulted said Jesse A. Hoyt with a deadly weapon.

Appellant was tried by the court without a jury and he was found guilty on all five counts. The court found the offense charged in the first count to be burglary in the first degree and that appellant was armed, and further found the crimes charged in counts two, three and four to be robbery in the first degree and that appellant was armed at the time of the commission of said crimes. Appellant's motion for a new trial and his application for probation were denied and he was sentenced to the state prison for the term prescribed by law, the sentences to run consecutively with relation to counts two, three and four, and counts one and five to run concurrently with relation to each other and to counts two, three and four. Appellant appeals from the judgment and the order denying his motion for a new trial.

On February 1, 1958, Fred L. Hoffa, his wife, Mary, and their daughter, Helen, were invited to the home of Dorothy and Jesse Hoyt at 419 Church Street in Chula Vista for dinner that evening. They arrived at the Hoyt residence at 6:15 p. m. and parked in the driveway beside the porch. Mr. Hoffa got out of the car and took some salad into the house. When Mrs. Hoffa started to get out she noticed appellant

getting out of his car, which was parked in back of the Hoffa car. She spoke to him but he did not answer. He then approached Mrs. Hoffa, with his right hand in his trouser pocket, and told her to go into the house. She replied that her daughter (who was a polio victim) could not go in; that she could not walk. Whereupon, appellant said, "All of you go into the house and don't make any noise." At about this time Mr. Hoffa and Mr. and Mrs. Hoyt came out of the house and saw appellant and his car. Mr. Hoffa picked up his daughter, Helen, and carried her into the house. He was followed by his wife, the Hoyts and appellant, who ordered them to "proceed on into the house." Mr. Hoffa carried his daughter into the front bedroom and put her on the bed. Appellant agreed that Mrs. Hoffa might stay with her. Whereupon, he closed the door and left them together. Mrs. Hoffa then climbed out of the window in the bedroom and ran to a nearby house, where she telephoned to the police. While appellant was accompanying the Hoffas into the bedroom, Mrs. Hoyt slipped out the back door of the house through the kitchen and went to a nearby house to use the telephone.

Meanwhile, in the living room appellant ordered the three men to take their wallets out and throw them on the floor. Mr. Hoffa and Mr. Dunbar (who, with his wife, was a guest of the Hoyts) each threw their wallets on the floor and when Hoyt refused to comply with the order, appellant took the wallet out of his hand, threw it down, and said, "I am giving the orders around here." Appellant then picked up each of the wallets, went through them and removed the money and cards therefrom. He took $15 from Mr. Hoffa's wallet and $10.25 from that of Mr. Hoyt and put the money in his pocket. He found a traveler's check in Mr. Dunbar's wallet and Mr. Dunbar signed it when ordered to do so by appellant.

After having torn up the wallets, appellant obtained a knife from the kitchen sink and asked Hoffa to bring his daughter out of the bedroom. Hoffa complied with this request and appellant then ordered him to take his daughter into the back bedroom. When this had been done, the daughter, Helen, was left there with Mrs. Dunbar. Appellant then ordered the three men into the front bedroom but as soon as they entered that room he ordered them into the bathroom. Appellant then went through the closet and dresser drawers in the back bedroom and asked Mrs. Dunbar where the wall safe was located and said, "I don't want to hurt a cripple, but I will if you don't tell me where the safe is." Appellant then brought the

three men into the back bedroom and lined them up. Appellant ordered Miss Hoffa to get up and walk. He then walked over to Hoffa and placed the knife against Hoffa's stomach, saying, "You get up and walk or I will kill your father." Miss Hoffa then attempted to get off the bed and fell to the floor. Hoffa picked her up and put her back on the bed on appellant's order. Appellant then walked over to Hoyt and placed the knife against Hoyt's stomach and asked him where the safe was located and threatened him. At about this time one of the police officers who had been informed by Mrs. Hoffa of the situation called on the telephone and asked for Mr. Hoyt. Appellant answered the phone and said, "There is no trouble here. You cops might as well go home." Hoyt was then ordered to tell the officer everything was all right. After Hoyt's compliance with this order, appellant again took the phone and said, "Listen, cop, I have seven hostages here and one is a polio patient. I am not in any trouble. You come in here and you know what will happen." The officer then said, "We have the place surrounded with tear gas and we are prepared to bring out the hardware if that is the way it has to be." Appellant replied, "I told you there was a polio patient here. If you throw tear gas in here it will kill her. Go ahead and throw it. I will be waiting for her."

While this telephone conversation was taking place, three other police officers entered the house through the bedroom window. One of these officers approached appellant, who was holding a knife in his right hand, and ordered him to drop the knife. Appellant refused and lunged for the bed where Miss Hoffa was lying and said, "I will get her if you shoot, I will get her." As appellant reached toward Miss Hoffa, the officer struck him with a revolver, rendering him unconscious.

A search of appellant's pocket revealed $47 in cash, plus a $50 traveler's check, and his own wallet, containing $46.52. He was later questioned by the officers and stated that he knew who he was and what he had done that evening. When asked why he had done these things he replied, "I don't know. I must have been crazy. I just guess I wanted to be a bad man." When asked what he was looking for while in the house he said, "Well, I was looking for a wall safe for some reason." He stated he did not have a gun when he entered the house and did not remember whether he pretended whether he had a gun or not.

At the trial he testified that on the morning of February 1, 1958, he had consumed three or four cans of beer and during

that afternoon he had purchased two pints of vodka and had consumed about four-fifths of each of them. He recalled some things about being in the house and doing certain things but did not know where or when it all happened.

Appellant admits that the evidence herein is legally sufficient to support a conviction of the crimes of burglary, robbery and assault with a deadly weapon and that the burglary, under the circumstances, was burglary of the first degree. He contends, however, that the evidence justifies a conviction of but one robbery and that the robbery was robbery of the second degree. This contention is without merit.

In *People* v. *Lagomarsino*, 97 Cal.App.2d 92, 100 [217 P.2d 124], the court held that a robbery of several persons, where property is removed from each person, involves a separate act and a separate intent toward each victim, and that a separate offense is committed against each person robbed. See also *People* v. *De Casaus*, 150 Cal.App.2d 274, 280 [309 P.2d 835].

In the instant case, appellant ordered Mr. Hoffa, Mr. Dunbar and Mr. Hoyt to take out their wallets and throw them on the floor. When Mr. Hoyt refused, appellant seized his wallet and threw it on the floor. He then removed the contents of each wallet and placed them in his pocket. He ordered Dunbar to sign a traveler's check which he had found in Dunbar's wallet. Under these circumstances it clearly appears that three separate robberies were committed.

Robbery which is perpetrated by a person armed with a dangerous or deadly weapon is robbery in the first degree. (Pen. Code, § 211a.) In *People* v. *Wallace*, 36 Cal. App.2d 1 [97 P.2d 256], it was held that robbery includes the element of asportation, and the appropriation of another's property at the scene of the holdup is a transaction which continues after the perpetrators depart from the place where the property was seized; that the perpetration of the crime of robbery is not necessarily completed the moment the stolen property is in the possession of the robbers, and that the escape of the robbers with their ill-gotten gains by means of arms is as important to the execution of the robbery as gaining possession of the property.

The finding of the trial court that appellant was armed is supported by the record. In this connection appellant argues that it was error to include in the judgment a statement that the appellant was armed where no such charge was included in the information. Citing Penal Code,

section 969c. ▮ However, in *People* v. *Verdier*, 96 Cal. App.2d 29, 33 [214 P.2d 433], the court said:

"With respect to appellant's other point based on *People* v. *Lesterjette*, 40 Cal.App.2d 327 [104 P.2d 844] that under section 969c, Penal Code, the fact that defendant was armed with a deadly weapon must be charged in the information if that fact is to be relied on in fixing the degree it is sufficient to point out that section 969c makes no reference to section 211a, Penal Code. The latter section provides: 'All robbery which is perpetrated by torture or by a person being armed with a dangerous or deadly weapon is robbery in the first degree . . .,' but it is not necessary to allege such facts as long as the information or indictment charges the crime. (*People* v. *Meyers*, 31 Cal.App.2d 515 [88 P.2d 212].) The degree of a crime is not required to be included in the charge. (*People* v. *Mendez*, *supra*, 27 Cal.2d 20, 23 [161 P.2d 929].)"

▮ Penal Code, section 969c, formerly provided: "Whenever a defendant is armed with a firearm or other weapon under such circumstances as to bring said defendant within the operation of . . . (Minimum Penalties Law and Dangerous Weapons Act) . . . the fact that the defendant was so armed *shall be* charged in the indictment or information or complaint. . . ." (Italics ours.) Penal Code, section 969c, as amended, has provided since 1957: "Whenever a defendant is armed with a firearm or other weapon under such circumstances as to bring said defendant within the operation of Section 3024 of the Penal Code relating to certain minimum penalties or of Section 12022 of the Penal Code, the fact that the defendant was so armed *may be* charged in the accusatory pleading. . . ." (Italics ours.) It therefore appears that it was not mandatory to charge that the appellant was armed during the commission of the burglary and robberies involved herein.

▮ Appellant further argues that the assault with a deadly weapon must necessarily be a part of one offense if the court finds he was armed during the burglary and the robberies. This argument is likewise without merit. ▮ In *In re Chapman*, 43 Cal.2d 385 [273 P.2d 817], the court held that if the force relied upon to establish the robbery is the same which is required to prove the assault, then petitioner is being punished twice for the same act contrary to section 654 of the Penal Code, but if it is not the same then the two convictions and sentences can stand; ▮ that to constitute first degree robbery it is necessary only that the accused be armed with a deadly weapon and that he take the property of another from

his person against his will ''by means of force or fear''; that if after the robbery is accomplished the robber beats the victim with the weapon, he is guilty of a separate crime of assault by means of force likely to produce great bodily injury; ▇ and that the applicability of Penal Code, section 654, depends on whether a separate and distinct act can be established as the basis for each conviction. ▇ Here, appellant took the property of three men by means of force and fear and subsequently, in another room of the house, he placed a knife which he had obtained from the kitchen against Mr. Hoyt's stomach and threatened him. This constituted a separate and distinct act from the robbery and burglary.

Judgment and order affirmed.

Griffin, P. J., and Shepard, J., concurred.