[Crim. No. 11308. Second Dist., Div. Two. Nov. 30, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JOBY TAYLOR, Defendant and Appellant.

Joby Taylor, in pro. per., and Louis Edelberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General and Anthony M. Summers, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—Taylor pleaded not guilty when indicted on three counts of burglary (Pen. Code, § 459), one count of attempted burglary (Pen. Code, § 664), two counts of grand theft (Pen. Code, § 487), and two counts of possession of a weapon by a felon (Pen. Code, § 12021). Except on the two counts of grand theft he was found guilty as charged. Additionally, the court found he was armed during the commission of the offenses.

One of the burglary victims, Mendelson, testified that a diamond pin and a gold watch belonging to his wife were found missing from his home near the UCLA campus on May 4, 1964. Darlene Grose, originally a codefendant, was granted immunity and testified that between May and August Taylor had given her the pin identified by Mendelson and a watch. In November Taylor told her that he had stolen them, and he took her to view the burglarized homes near UCLA. They discussed which homes would be burglarized that night. At 11 p.m. she drove Taylor to a residential neighborhood near UCLA, where she parked the car and waited while Taylor

with a gun tucked in his belt went to commit the burglaries. On his return to the car about 6 a.m. Taylor said he had entered the burglarized homes by prying open doors with a screwdriver. He showed Darlene a man's ring initialed ''E.I.S.,'' a lady's watch and a lady's ring. Earl I. Swetow testified that someone had entered his home that night by prying open the door and had taken his ring initialed ''E.I.S.'' and his wife's diamond ring and watch.

After her arrest, Darlene took Officer Gravante to an area near UCLA and pointed out homes belonging to Mendelson, Swetow, and Brunswick, which she and Taylor had picked to burglarize. At the time she identified a cap worn by Taylor on the evening of the November burglaries. Mendelson testified he had awakened around 3 a.m. on the night of the burglaries and had seen a man on his balcony wearing the cap identified as Taylor's.

Taylor appeals from the judgment, claiming (1) admissions he made in the absence of counsel to Officer Gravante following the preliminary hearing should have been excluded from evidence; (2) there was insufficient corroboration to connect him with the November crimes; and (3) there was no evidence to support the finding he was armed during the May burglaries.

1. The arresting officer advised Taylor of his right to remain silent, to have an attorney, and that any statement he made could be used against him. Taylor said he understood his rights. When he was later asked by Officer Gravante if he understood his rights Taylor replied that he did, saying that both the arresting officer and his own attorney had advised him of them. Two days after the preliminary hearing at which he had been represented by counsel, Taylor asked to see Gravante. During their conversation, when Gravante refused to do some personal errand for Taylor, the latter made an outburst which contained incriminating statements. These statements were volunteered and not the result of police interrogation. Taylor knew his rights and understood them, having been advised of them by the police as well as his own attorney. When an accused person in custody understands his rights, the decision to exercise these rights is his. Taylor chose to waive his right to remain silent, and the admission in evidence of his volunteered statements was proper. (*Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

2. Taylor argues there was insufficient evidence corroborat-

ing the testimony of his accomplice, Darlene, to support his conviction for the November burglaries. Corroborating evidence need only relate some act or fact of the offense to the defendant so as to reasonably satisfy the trier of fact that his accomplice is telling the truth. (*People* v. *Kutz,* 187 Cal.App. 2d 431 [9 Cal.Rptr. 626] ; Pen. Code, § 1111.) Circumstantial evidence alone suffices to corroborate an accomplice's testimony. (*People* v. *Temple,* 102 Cal.App.2d 270 [227 P.2d 500].) Darlene's testimony was supported by Mendelson's testimony, which included identification of Taylor's cap as the cap worn by the burglar, by Swetow's testimony that his house was burglarized in November and his ring initialed "E.I.S." stolen, by the pry marks and method of entry which indicated the same *modus operandi* for the May and November burglaries. Additionally, the court could take into consideration admissions made by Taylor to Gravante. There was sufficient evidence to corroborate the testimony of Darlene.

3. Taylor contends there was no evidence to support a finding he was armed during the May burglaries. This is correct. Nor was he charged in the information with being armed during the May burglaries. Since neither a charge was made nor evidence offered on this subject we cannot hold that the May burglaries were burglaries of the first degree. (Pen. Code, § 460.)

The judgment is modified to reduce the conviction on counts I and III to second degree burglary, and as modified the judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

Respondent's petition for rehearing was denied December 22, 1966, and the following opinion was then rendered:

FLEMING, J.—On petition for rehearing, the Attorney General contests the reduction of the judgment on counts I and III from first to second degree burglary, arguing there was sufficient evidence these burglaries were committed in the nighttime to support a conviction for burglary in the first degree.

 It might well be that a conviction for first degree burglary could have been supported by some other finding than the one relied on by the court, but our concern on appeal is with the decision of the court and not with what might have

been. The judgment, the clerk's minutes, and the reporter's transcript reflect a decision based on a finding that defendant was armed with a deadly weapon at the time of these offenses, a finding unsupported by evidence on counts I and III.

The weakness in the Attorney General's assumption that other findings from the evidence would necessarily have been made by the trial court becomes apparent from a casual examination of the present record. Mr. Brunswick, the victim of count III, placed the time of that burglary at 5:20 on the morning of May 4, 1964. According to the Almanac on that date sunrise at Los Angeles occurred at 5 Pacific Standard Time. Without attempting to analyze the complications of local mean time, daylight saving time, and adjustments for standard meridians and parallels, it is at least arguable that the evidence on that particular count did not support a finding of burglary committed during the nighttime, defined by statute as the period between sunset and sunrise. (Pen. Code, § 463.) It seems reasonably certain the time of sunrise in West Los Angeles was not taken into consideration by the court because of its misapprehension that the defendant had been armed during each of his offenses. We adhere to our view that a judgment of first degree burglary on counts I and III based on a finding that the defendant was armed with a deadly weapon is unsupported by the evidence and must be reduced to second degree burglary.

This case illuminates certain weaknesses in the present method of charging and convicting for degrees of burglary, weaknesses which, if uncorrected, are likely to create future misunderstandings and lead to controversies over due process. Historically, the practice of charging burglary generally, without specifying the elements necessary to make the crime burglary in the first degree, arose from the courts' difficulties with the niceties of pleading at the time the concept of burglary was expanded to include what had theretofore been known as housebreaking. In 1872 the Supreme Court held that burglary (nighttime) and housebreaking (daytime) were distinct offenses which could not be combined in one charge. (*People* v. *Taggart,* 43 Cal. 81.) As the court said in the later case of *People* v. *Jefferson,* 52 Cal. 452, 454: "It would be illogical, and not in accord with elementary principles of pleading, to declare that if the indictment charged an entry in the night-time only, the jury or Court could find the defendant guilty of an entry in the day-time." To overcome this difficulty the Penal Code was amended in 1876 to provide

for degrees of burglary, and the practice developed of charging burglary generally under a pleading which would permit a finding of either first or second degree burglary. (*People* v. *Jefferson*, 52 Cal. 452; *People* v. *Smith*, 136 Cal. 207 [68 P. 702].)

■ Since the adoption of degrees of burglary in 1876, there have been a number of significant statutory changes involving the crime of burglary. The types of burglary in the first degree have proliferated. There are now four classifications:

> burglary of a habitation in the nighttime,
> burglary armed with a deadly weapon,
> burglary by one who arms himself during the crime,
> burglary accompanied by assault.

Likewise since 1876, the disparity between punishment for first and second degree burglary has widened, and while the maximum penalty for first degree burglary has been increased to life imprisonment (Pen. Code, § 461), the minimum penalty for burglary in the second degree has been reduced to a *misdemeanor* (Pen. Code, § 461). Additionally, the Legislature in 1935 authorized the pleading of the offense of burglary armed with a deadly weapon by the addition to the general charge of burglary of a separate specification that the defendant was armed at the time. The specification that the defendant was armed with a deadly weapon must now be charged in the pleading (Pen. Code, § 969c), and its truth or falsity returned in the verdict (Pen. Code, § 1158a).

In the light of these changes, it would appear good practice today, wholly consonant with procedural due process of law, for a defendant to be informed by separate specification to the charge which of the elements making an offense burglary in the first degree he will be required to defend against. As a matter of pleading, this can readily be accomplished by adding one or more appropriate specifications to the general charge of burglary, in the manner now required for the specification of burglary while armed with a deadly weapon and for the specification of a former felony conviction. The specification will inform the defendant which, if any, of the four different factual situations comprising first degree burglary he will be required to answer. If proof of the specification fails, the prosecution can still rely on the general charge of burglary to support a conviction for second degree burglary.

We think, too, good practice requires the trier of fact to make a positive finding on the specification in order to sup-

port a verdict of conviction in the first degree. Such specificity in the charge and the verdict will tend to prevent mixups of the kind which took place here by providing a reliable record of the exact offense for which a particular defendant stands convicted, a record which will be continuously useful in his later history on such questions as punishment, probation, parole, pardon, and subsequent sentences for other crimes within or without the State of California. The nature of a subsequent sentence elsewhere might well turn on whether the defendant's first degree burglary here had been accompanied by an assault or had merely taken place between sunset and sunrise. In short, where, as here, there are four different factual bases which go to make up first degree burglary, we think the criminal process should disclose, either in the pleadings or in the verdict, and preferably in both, the exact crime for which a defendant stands charged and convicted.

The order heretofore certifying for nonpublication our earlier opinion in this case is vacated, and both opinions are ordered published.

The petition for rehearing is denied.

Roth, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 25, 1967, and respondent's petition for a hearing by the Supreme Court was denied May 17, 1967.