[Crim. No. 14768.    Second Dist., Div. Three.    July 22, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND LEWIS, Defendant and Appellant.

Gilbert F. Nelson under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General and Bernard S. Kamine, Deputy Attorney General, for Plaintiff and Respondent.

FRAMPTON, J. pro tem.*—

### STATEMENT OF THE CASE

Defendant was charged by information with burglary while armed with a deadly weapon in violation of section 459, Penal Code (count I), assault with a deadly weapon with intent to commit murder in violation of section 217, Penal Code (count II), and grand theft of a firearm in violation of section 487,

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

914

subdivision 3 of the Penal Code (count III). He was also charged with a prior conviction of rape, a felony, on February 25, 1948, of robbery on May 18, 1948 (and imprisonment in state prison), of robbery on February 28, 1962 (and imprisonment in state prison). All were suffered in Los Angeles County.

Before trial the first prior conviction was stricken and the defendant admitted the second and third priors.

Upon trial by jury, defendant was found guilty of burglary which was fixed at burglary of the first degree. He was also found to have been armed at the time of the commission of the offense. He was also found guilty of both assault with a deadly weapon under section 245 of the Penal Code and grand theft. A probation report was ordered. After hearing, defendant's motion for a new trial was denied, probation was denied, and sentence to state prison followed. The sentences on counts I and II were ordered to run consecutively. The sentence on count III was ordered to run concurrently with the sentences on counts I and II. The appeal is from the judgment and from the order denying motion for a new trial.[1]

STATEMENT OF FACTS

Shortly after midnight on the morning of August 1, 1967, John Charles Patrick, a security guard at the Food Giant Supermarket, 1021 West Santa Barbara Street, in the City of Los Angeles, was checking out various areas of the store subsequent to its closing and prior to his and other employees' departure. As was his custom, he had his .38 caliber revolver drawn. He proceeded into the stock room, an area from which the public is normally excluded, and into a ladies restroom which was adjacent to the stock room. A separate lounge connected to the restroom was used by the supermarket for storage. In this lounge, which was lighted, Mr. Patrick noticed some boxes which were not in their usual location. Upon investigating, he discovered a man crouched behind the boxes and ordered him to get up. He heard the man scuffling around as though he were trying to get up; however, the barrel of a gun appeared from the side of a box. Mr. Patrick started backing toward the entrance to the lounge. He was about 6 to

---

[1]The order denying motion for a new trial, in the circumstances here shown, is a nonappealable order. (Pen. Code, § 1237.) Therefore, the appeal from such order must be dismissed.

8 feet from the box when a shot was fired from the gun which appeared from the side of the box.

The first shot missed Mr. Patrick, and he continued backing toward the door. However, as he got to the door, a second shot was fired which struck him in the knee. He fell backwards onto his back just outside the lounge and lay there for a few minutes. Then the defendant came out of the lounge. He had a gun, and he started firing at Mr. Patrick who was still lying on the floor. When the two men were about 3 or 4 feet apart, Mr. Patrick twice fired his own gun at the defendant; however, the defendant continued to approach him. The two men began to struggle. Defendant beat Mr. Patrick over the head with his (defendant's) gun. Mr. Patrick dropped his own gun, but succeeded in wrestling defendant's gun away from him. He could not get the defendant's gun to fire, so he dropped it on the floor. Meanwhile, defendant had picked up Mr. Patrick's revolver. The latter then released his hold on the defendant, and the defendant, after picking up his own weapon, fled with both guns. During the struggle, a second man came out of the lounge, fired a shot from a gun he was carrying, and ran through the door of the restroom.

This struggle occurred at about 12:15 to 12:30 a.m. on August 1, 1967. As a result of the beating and the gunshot wound, Mr. Patrick was hospitalized for about two months.

Shortly after midnight on the same morning, Ernest L. Taylor and Ruby Tunstall, employees of the supermarket, had finished their post-closing duties and were waiting for the manager to unlock a door so that they could leave. A man suddenly appeared from the back of the store. After trying unsuccessfully to open one of the exit doors, he took a gallon wine jug and threw it through a glass panel in the door. He then left the store through the broken panel.

Mrs. Tunstall then heard screaming from the area of the ladies restroom in the back of the store. Both she and Mr. Taylor saw the defendant come from the back of the store. The defendant was brandishing two guns. Mr. Taylor thought one of the guns was an automatic and that the other was a revolver. Defendant fled from the store through the hole in the door panel made by the other man. Mr. Patrick, Mrs. Tunstall and Mr. Taylor positively identified the defendant as the man carrying two guns.

About 8 a.m. on August 1, 1967, Agnes Mills discovered the defendant hiding under a carpet near the rubbish container at the rear of her apartment at 1078 West 39th Street, in the

City of Los Angeles. Defendant had been shot twice. The police were called, came to the location and took the defendant away. The Food Giant Market, where the defendant shot Mr. Patrick, is located about three blocks from Mrs. Mills' apartment.

Nelda R. Ridley lived in another apartment in the same complex as Mrs. Mills. On August 20, 1967, Miss Ridley, on her way to the trash area, using a route different from the one she customarily used, discovered a revolver. On the same date, Stephen Curish, a police officer for the City of Los Angeles, responded to Miss Ridley's telephone call, and following the latter's directions, recovered the revolver which Miss Ridley had discovered. He picked up the weapon in the back yard near a fence at 1080 West 39th Street. This weapon was later identified as Mr. Patrick's revolver.

Inasmuch as the sufficiency of the evidence to sustain the judgment is not under attack, we will not detail the evidence of the defense. The defense was that of an alibi.

In the original proceedings on appeal, defendant contended that it was error for the trial court to have included in the judgment as to count I (burglary of the first degree) the finding "that defendant was armed as alleged." Count I of the information had alleged "That at the time of the commission of the above offense said defendant was armed with a deadly weapon, to wit, a revolver." The inclusion of this finding, defendant claimed, violated the double punishment provision of Penal Code section 654, since his conviction for first degree burglary necessarily included the implied finding that he had been armed. The Attorney General argued, in response, that the conviction on count I was not dependent upon defendant's having been armed because the burglary had occurred in an inhabited building at night.

This court rendered its opinion, filed March 26, 1969, wherein we held that the building occupied by the Food Giant Supermarket at the time of the burglary was an uninhabited building within the meaning of section 460 of the Penal Code. The Attorney General petitioned for a rehearing, which was granted, urging that such holding was erroneous in that occupancy of the building by employees of the market at the time of the commission of the burglary classified such building as an inhabited structure within the purview of section 460 of the Penal Code. The defendant on rehearing argues in support of the court's view on this issue. Upon further consideration of this question we are of the opinion that the holding in

the original opinion is sustained by sound reason and the weight of authority.

"Every person who enters any house, . . . shop, . . . store, . . . or other building, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." (Pen. Code, § 459.) "Every burglary of an inhabited dwelling house . . . or building committed in the nighttime, and every burglary, whether in the daytime or nighttime, committed by a person armed with a deadly weapon, or who while in the commission of such burglary arms himself with a deadly weapon, or who while in the commission of such burglary assaults any person, is burglary of the first degree." (Pen. Code, § 460.)

The suggestion that "inhabited" modifies only "dwelling house" is not pressed by respondent in its brief on rehearing and is not supported by law. Several cases have held that the word "inhabited" modifies the word "building." (*People* v. *Warwick*, 135 Cal.App. 476 [27 P.2d 396]; *People* v. *Slepnikoff*, 101 Cal.App. 238 (dictum) [281 P. 657]; *People* v. *Black*, 73 Cal.App. 13, 28 [238 P. 374]; *People* v. *Clinton*, 70 Cal.App. 262 [233 P. 78].) Further, in order to accept respondent's view we would be forced to construe section 460 as affording more protection to structures not used as residences than to structures used as residences, since burglary of the former would be of the first degree regardless of whether the structure was inhabited or uninhabited. Such a construction would be in direct conflict with the common law policy of protecting the home and only the home. (4 Blackstone Commentaries 223, 224; 2 Wharton's Criminal Law, § 423 pp. 44-46; Comment, *Development of the Law of Burglary in California*, 25 So.Cal.L.Rev. 75; Note, *A Rationale of the Law of Burglary*, 51 Colum.L.Rev. 1009, 1020-1021; *State* v. *Surles*, 230 N.C. 272 [52 S.E.2d 880, 882].) Although the common law concept of burglary has been vastly expanded, so that many types of buildings are now protected (Pen. Code, § 459; 25 So.Cal.L.Rev., *supra*, at pp. 75-76, 76-84; 51 Colum.L.Rev., *supra*, at pp. 1010-1011; 2 Wharton, *supra*, § 428, pp. 49-52), there is no indication in the authorities that the common law has been reversed by a California policy actually favoring

[2]See *People* v. *Stratton* (1934) 136 Cal.App. 210 [28 P.2d 699], decided 11 years after the 1923 amendment to the Penal Code formulating the present law of burglary: "The act of the legislature in framing [the burglary law] . . . was for the purpose of protecting buildings, *residences especially* . . . ." (Italics added) (136 Cal.App. at p. 212.)

nonresidences,[2] nor would such a policy seem consistent with the goals intended to be served by the law of burglary.

In determining the meaning of the phrase ''inhabited building,'' we are confronted with three likely interpretations and a line of authority rejecting each. These interpretations include the following: (1) ''currently used as living quarters,'' (2) ''presently occupied,'' the meaning urged by respondent; and (3) ''currently used,'' as opposed to ''abandoned'' or ''not yet in use.''[3] Since meaning (3) is not involved and has been rejected in *People* v. *Warwick, supra,* 135 Cal.App. 476, *People* v. *Black, supra,* 73 Cal.App. 13, and *People* v. *Clinton, supra,* 70 Cal.App. 262, which held that burglary of an unoccupied store closed for the evening in accordance with its regular schedule can be of only the second degree, the present discussion will be confined to the interpretations of meanings (1) and (2), respectively.

Rejecting respondent's position is a line of authority holding that a building which is in current use as living quarters but from which the owner is temporarily absent is inhabited. This construction has been employed consistently in California (*People* v. *Loggins,* 132 Cal.App.2d 736 [282 P.2d 961]; *People* v. *Hann,* 104 Cal.App. 492 [285 P. 1070]; *People* v. *Allard,* 99 Cal.App. 591 [279 P. 182]; see 1 Witkin, Cal. Crimes (1963) § 452 p. 415; 25 So.Cal.L.Rev., *supra,* at pp. 100-101), and is in accord with the common law and the law of most states (see *State* v. *Bair,* 112 W.Va. 655 [166 S.E. 369, 85 A.L.R. 424]; *State* v. *Mason,* 74 Ohio St. 65 [77 N.E. 283]; *State* v. *Meerchouse,* 34 Mo. 344 [86 Am.Dec. 109]; 13 Am. Jur.2d, Burglary, § 4 p. 321; 51 Colum.L.Rev., *supra,* at p. 1010; Perkins, Criminal Law 159 (1957); 2 Wharton, *supra,* § 427, pp. 48-49; 10 Ala.L.Rev. 443; A.L.I. Model Penal Code, *supra,* art. 221 (Burglary); contra, *Thomas* v. *State,* 267 Ala. 44 [100 So.2d 329]). The implication behind such an interpretation is that the ''inhabited''—''uninhabited'' dichotomy turns not on the immediate presence or absence of some person but rather on the character of the use of the building. Drawing the distinction based upon the character of the use of the building meshes with the common law concept of burglary as a violation of the habitation of living quarters. (4 Blackstone Commentaries, *supra,* 223, 224; 2 Wharton, *supra,* § 406, p. 25; 25 So.Cal.L.Rev., *supra,* at p. 75; 51 Colum.L.

[3] See A.L.I. Model Penal Code, Tentative Draft No. 11, art. 221 (Burglary), which punishes an unauthorized entry into an inhabited building used for sleeping or business, whether a person is actually present or not.

Rev., *supra,* at pp. 1020-1021; *State* v. *Surles, supra,* 230 N.C. 272 [52 S.E.2d 880, 882].)

The authority supporting the interpretation of "inhabited" as "presently occupied" consists of dicta in cases dealing with burglaries of nonresidences. In *People* v. *Slepnikoff, supra,* 101 Cal.App. 238, where the evidence indicated that a night watchman had been in an otherwise unoccupied furniture store during the burglary, the court noted, "The facts as narrated show the building was inhabited." (101 Cal.App. at p. 240.) Since, however, there was also evidence establishing that defendant was armed during the burglary, which evidence was sufficient in itself to support the conviction for first degree burglary, the finding that the building was inhabited was unnecessary to the decision. Two other cases—*People* v. *Warwick, supra,* 135 Cal.App. 476, and *People* v. *Black, supra,* 73 Cal.App. 13—have held that burglary of an unoccupied structure is of the second degree; but in each case the court emphasized the fact that no one was present in the building at the time of the offense.

Trends in the statutory development of the law of burglary in this state do not support respondent's interpretation of Penal Code section 460. The additions to the types of structures protected (Pen. Code, § 459; 25 So.Cal.L.Rev., *supra,* at pp. 75-76, 76-84; 51 Colum.L.Rev., *supra,* at pp. 1010-1011; 2 Wharton, *supra,* § 428, pp. 49-52), for example, and the partial elimination of the requirement that the offenses be committed at night (Pen. Code, § 459; Stats. 1875-1876, ch. 56, p. 112; 25 So.Cal.L.Rev., *supra,* at pp. 94, 99; 51 Colum.L.Rev., *supra,* at pp. 1015-1016), and the elimination of the requirement of a breaking (Pen. Code, § 459; 25 So.Cal.L.Rev., *supra,* at p. 84; 51 Colum.L.Rev., *supra,* at pp. 1012-1015) are inconclusive with respect to the present problem. Inferences to be drawn from the legislative history of Penal Code section 460, as traced by respondent from the version reported out by the Senate Judiciary Committee to the final version, likewise seem equally compatible with both interpretations of "inhabited."

As the note on *A Rationale of the Law of Burglary, supra,* 51 Colum.L.Rev. 1009, 1022-1023, points out, the principal purpose for punishing entry into certain buildings with the intent to commit certain crimes is that "when such crimes are committed in those buildings . . . there arises a significantly greater danger that crimes involving personal injury will ensue than arises when such crimes are committed under other circumstances." (51 Colum.L.Rev., *supra,* at p. 1022.)

■■    Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous to personal safety; and thus the higher degree of the burglary law is intended to prevent those situations which are most dangerous, most likely to cause personal injury. This intent is expressed in section 460 by the fact that burglaries committed by armed persons are of the first degree regardless of whether or not there are additional aggravating circumstances.

The respondent's interpretation is consistent with the goal of the first degree burglary law since both the physical presence of persons and the character of the use of the building affect the degree of personal danger. The factor of physical presence seems to be the more basic because it is logically necessary to the existence of danger to persons. However, the fact that the building is used as a home also increases such danger: a person is more likely to react violently to burglary of his living quarters than to burglary of other places because in the former case persons close to him are more likely to be present, because the property threatened is more likely to belong to him, and because the home is usually regarded as a particularly private sanctuary, even as an extension of the person. Both interpretations, therefore, are compatible with the purposes served by the first degree burglary law, and the question of which aggravating factor the Legislature intended to incorporate into section 460 must be resolved by looking elsewhere.

Respondent suggests that the Legislature might have intended to take account of *both* factors by elevating to the first degree all burglaries of a regularly used dwelling house and of a presently occupied nonresidence. Although this interpretation would give expression to the important factor of physical presence and it would also preserve without qualification or limitation the holdings in *People* v. *Loggins, supra,* 132 Cal.App.2d 736, *People* v. *Hann, supra,* 104 Cal.App. 492, and *People* v. *Allard, supra,* 99 Cal.App. 591, it entails the unsatisfactory requirement that we attribute two meanings to the

modifier "inhabited," depending on the noun modified—a highly unnatural construction which violates the usual rule that one should use different words if one intends different meanings.

Assuming, then, that the word "inhabited" as used in section 460 has only one meaning, we can find a clue to the Legislature's choice among the two alternative aggravating factors in its decision to include in the presently pertinent subdivision of section 460 the requirement that the burglary be committed at night. The inclusion of this provision suggests that the Legislature was adopting the position contrary to that taken by respondent, because the fact that a burglary occurs at night serves to aggravate it—i.e., to increase the danger to persons—only if sleeping quarters are involved. It is difficult to perceive how a burglary of an occupied nonresidence is more dangerous if committed in the nighttime than if committed in the daytime: the probability of violence does not increase appreciably merely because it is dark outside. Rather, the incremental danger to persons caused by the fact that the burglary is at night is consequential when and only when the building is likely to be occupied by *sleeping* persons. As Blackstone points out, " [T]he malignity of the offense does not so properly arise from its being done in the dark as at the dead of night, when all the creation, except beasts of prey, are at rest; when sleep has disarmed the owner and rendered his castle defenceless." (4 Blackstone Commentaries, *supra,* 224, quoted at 51 Colum.L.Rev., *supra,* at p. 1016, fn. 48.) Additionally, the sudden disruption of sleep creates the possibility of a careless, startled reaction which could generate violence.

It is likely, therefore, that the Legislature intended to place nighttime burglaries of a building currently used as sleeping and living quarters in the first degree and all burglaries by unarmed persons of other buildings, whether occupied or not, in the second degree. This interpretation of the word "inhabited" is the only one which at once gives full effect to the requirement of nighttime, employs an unstrained grammatical construction, and harmonizes with the stronger line of authority, the direct holdings of *People* v. *Loggins, supra,* 132 Cal. App.2d 736, *People* v. *Hann, supra,* 104 Cal.App. 492, and *People* v. *Allard, supra,* 99 Cal.App. 591.

The building here in question was occupied by the employees of the Food Giant Supermarket who at the time of the burglary were engaged in their customary duties of closing the establishment at the close of the day's business. There

is no evidence that the building was occupied as a dwelling, or living quarters. The degree of the burglary therefore would depend upon whether the defendant was armed with a deadly weapon at the time of its commission, or while in the commission the defendant armed himself with a deadly weapon, or while in the commission of the burglary the defendant assaulted a person. (See *People* v. *Warwick, supra,* 135 Cal. App. 476; *People* v. *Black, supra,* 73 Cal.App. 13, 28; *People* v. *Clinton, supra,* 70 Cal.App. 262.)

As heretofore pointed out, the defendant was charged with burglary and with being armed with a deadly weapon at the time of its commission. The evidence disclosed that he was armed with a deadly weapon at the time of the commission of the burglary. This made the burglary that of the first degree, that is burglary of an uninhabited building committed by a person armed with a deadly weapon. In this circumstance the finding in the judgment relating to the burglary count "that defendant was armed as alleged" should be stricken as imposing double punishment under section 12022, Penal Code in violation of section 654, Penal Code.

The judgment is modified by striking therefrom under count I, the language "and that defendant was armed as alleged." (See *People* v. *Thomsen,* 239 Cal.App.2d 84, 97-98 [48 Cal.Rptr. 455].)

The judgment as modified is affirmed.

Cobey, Acting P. J., and Schweitzer, J., concurred.