[Crim. No. 5228. Third Dist. May 15, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH NUNEZ, Defendant and Appellant.

**COUNSEL**

J. Joseph Childers, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, James T. McNally and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JANES, J.**—Defendant appeals from the judgment entered on a jury verdict finding him guilty of the first degree burglary of a telephone booth.[1] The information originally charged defendant with an additional count of burglary of the telephone booth by use of explosives (Pen. Code, § 464). Before impanelment of a jury, the explosives count was dismissed on the motion of the People after the prosecutor told the court the evidence would show a burglary of a telephone booth by use of a hand gun.

The contentions raised on appeal are: (1) Under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], the evidence was insufficient to show that, before he was interrogated by

---

[1]Penal Code section 459 provides in material part that "Every person who enters any . . . building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary." A telephone booth—at least one, as in this case, with three walls, a door, roof, and floor—is a "building" within the meaning of this section. (*People* v. *Miller* (1950) 95 Cal.App.2d 631 [213 P.2d 534].)

the police, defendant knowingly and intelligently waived his constitutional right to remain silent; (2) the court's instructions on first degree burglary were prejudicially erroneous; and (3) defendant was denied procedural due process because the count of the information upon which he was convicted charged burglary in general terms without specifying the acts and classifications of first degree burglary. We have concluded that defendant's contentions cannot be sustained. Accordingly, the judgment will be affirmed.

## Facts

On the evening of August 19, 1968, defendant telephoned a friend, Clyde Titman, and made arrangements to borrow Titman's car for the evening. At approximately 4:35 a.m. on August 20, a truck driver saw defendant and a woman inside a pay telephone booth on the premises of a closed but well illuminated service station in Sacramento County. The truck driver heard the rattling of coins and observed defendant tugging at the interior of a booth. When defendant saw the truck driver, he stepped from the telephone booth, carrying a cloth object. Accompanied by the woman, he drove away in a vehicle later identified as Titman's. The truck driver followed defendant, noted the license number of the car, and reported a telephone theft to the telephone company operator.

The investigating police officer found parts of the telephone scattered about the booth, including the faceplate from the coin box. In the lower center of the faceplate was a hole, about ⅜ inch in diameter. The officer detected a strong odor of burned gunpowder in the booth, and there was burned powder around the hole on the faceplate. Cotton fibers and metallic debris were found on the telephone and on the inside of the booth glass, and fibers and debris of similar types were found in the Titman vehicle. The same kind of physical and olfactory evidence was found in another telephone booth, about a block away, that had been burglarized in the same manner that morning.

Defendant was apprehended on August 21 while he was riding with Titman in the latter's car accompanied by two women, one of whom ("Elaine") was identified by the truck driver during trial as defendant's companion in the telephone booth on the morning of the burglary. After the arrest, the truck driver picked defendant out in a police lineup. At trial, defendant testified that he was "nowhere near" the scene of the crime the evening of August 19 or the morning of August 20.

## The Miranda Waiver Issue

The following facts were developed, on *voir dire*, out of the presence of the jury: At 8:40 a.m. on August 21, after his arrest earlier that day,

defendant was interrogated by Sergeant Clark of the Sacramento Police Department. Defendant appeared to be alert and to understand what he was doing and what he was being told. Sergeant Clark orally gave him all the warnings required by *Miranda* and then specifically asked defendant if he understood the advice given. Defendant stated that he understood those rights.

The officer then inquired whether, having those rights in mind, defendant wished to speak to him. According to the sergeant's testimony, defendant answered "that he understood his rights, and we [Clark and a fellow officer] then gave him a copy of our waiver form. And, after explaining this to him, he refused to sign, but stated that he would give a statement to us." Sergeant Clark recapitulated that, when "we asked him if he was willing to sign the waiver," defendant's reply—all in one sentence—was "I'll talk to you, but I will not sign the waiver." The waiver form itself was not placed in evidence, nor was any evidence received as to the explanation which Clark gave defendant about that form.

Sergeant Clark then proceeded to question defendant and obtained a statement from him. Over defense counsel's objection that "defendant indicated he desired not to talk, by refusing to sign the waiver form," the statement was ruled admissible by the court, which found that defendant had refused to sign the waiver after being fully informed of his *Miranda* rights "but he consented to talk to the officer, and he did so intelligently."

When the jury was recalled, the officer testified as to answers given by defendant to questions put to him during the interrogation concerning where and with whom he lived and where he had spent the hours of August 20 subsequent to the burglary that day. At no time during the interrogation had defendant admitted any connection with the burglary, but he did make statements, related by the officer before the jury, which seriously affected his credibility, as well as his trial testimony relative to the defense of alibi. The statements were contradictive, also, of the testimony of defendant's alibi witness ("Martha").

Defendant, in charging violation of his Fifth Amendment right, contends that the damaging statement was taken from him after he expressed a desire to invoke his constitutional right to remain silent and that, when he refused to sign the waiver of rights form, it became incumbent upon the officer to inform him that if he did give a statement, he would waive his right to remain silent notwithstanding his refusal to sign the waiver form.

Several well established principles guide us in the consideration of defendants' contentions. ■ The first is that courts indulge every reasonable presumption against waiver of fundamental constitutional rights.

(*Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019]; *People* v. *Carter* (1967) 66 Cal.2d 666, 669-670 [58 Cal.Rptr. 614, 427 P.2d 214].) ■ The People have the burden of proving a defendant's knowledge of his rights and his intelligent understanding thereof (see, *People* v. *Johnson* (1969) 70 Cal.2d 469, 477 [74 Cal.Rptr. 889, 450 P.2d 265]), and high standards of proof are required to establish that the defendant had such knowledge and understanding or that he otherwise waived those rights (*People* v. *Brooks* (1966) 64 Cal.2d 130, 137 [48 Cal.Rptr. 879, 410 P.2d 383]). ■ The issue of waiver, however, is to be resolved upon the entire record. (*People* v. *Lara* (1967) 67 Cal.2d 365, 376 [62 Cal.Rptr. 586, 432 P.2d 202].)

■ *Miranda,* of course, "does not require a written waiver, but only a waiver made 'voluntarily, knowingly and intelligently.' " (*Klingler* v. *United States* (8th Cir. 1969) 409 F.2d 299, 308; see, *People* v. *Hansard* (1966) 245 Cal.App.2d 691, 697 [53 Cal.Rptr. 918].) In *Miranda* itself the federal Supreme Court emphasized that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (384 U.S. at p. 478 [16 L.Ed.2d at p. 726].)

■ In the case at bench defendant, after the *Miranda* warning, expressly stated that with a full understanding of the constitutional rights available to him, he would talk to Sergeant Clark. The only indication advanced that he did not knowingly and intelligently waive those rights was his declination to sign the waiver form. It is noteworthy that defendant, although he elected to testify, made no attempt to contradict the testimony of Sergeant Clark or to point out any lack of understanding on defendant's part as to the effect of talking to the officer while declining to waive his rights in writing.

Cases cited by defendant (*Brookhart* v. *Janis* (1966) 384 U.S. 1 [16 L.Ed.2d 314, 86 S.Ct. 1245]; *United States* v. *Slaughter* (4th Cir. 1966) 366 F.2d 833) are distinguishable on their facts. A more appropriate comparison is furnished by *Klingler* v. *United States, supra,* 409 F.2d 299, in which the court stated, at page 308: "In this case, Klingler was advised both orally and in writing of his constitutional rights. He stated that he understood his rights and he selectively answered [the interrogating officer's] questions. Klingler's refusal to sign the written waiver form without the presence of counsel is not fatal; *Miranda* does not require a written waiver, but only a waiver made 'voluntarily, knowingly and intelligently' . . . . We believe that Klingler 'voluntarily, knowingly and intelligently' waived his right to counsel with regard to the admissions in question. That Klingler chose of his own free will to speak without the assistance of counsel should give him no cause for complaint."

Our own Supreme Court basically reiterated this concept in *People* v.

*Johnson* (1969) 70 Cal.2d 541, at page 558 [75 Cal.Rptr. 401, 450 P.2d 865]: "Once the defendant has been informed of his rights, and indicates that he understands those rights, it would seem that his choosing to speak and not requesting a lawyer is sufficient evidence that he knows of his rights and chooses not to exercise them." (See, also, *People* v. *Lantz* (1968) 265 Cal.App.2d 5, 7-9 [71 Cal.Rptr. 188].)

We agree with the finding by the trial judge that although defendant refused to sign the waiver, he did not decline to waive his rights. (Cf. *People* v. *Fioritto* (1968) 68 Cal.2d 714, 718 [68 Cal.Rptr. 817, 441 P.2d 625].) The determination made by the trial judge should not be disturbed by a reviewing court unless palpably erroneous. (*People* v. *Pierce* (1968) 260 Cal.App.2d 852, 858 [67 Cal.Rptr. 438].)

### The Burglary Instructions

Defendant does not attack the sufficiency of the evidence to support the verdict of first degree burglary, but contends that the court's instructions on the subject of burglary were prejudicially erroneous. He attacks particularly the emphasized portion of the following instruction given by the court:

*"Every person who enters any structure such as is shown by the evidence in this case,* with intent to unlawfully steal, take and carry away the personal property of another, of any value is guilty of burglary. The essence of a burglary is entering a place such as I have mentioned with such specific intent; and the crime is complete as soon as the entry is made, regardless of whether the intent thereafter is carried out." (Former CALJIC 201 Alt. (New); now CALJIC No. 14.50.) (Italics added.)

After reading the foregoing instruction to the jury, the court then instructed on the degrees of burglary: "There are two degrees of burglary. *Every burglary of an inhabited dwelling house* or trailer coach committed in the nighttime, that is, between sunset and sunrise, *and every burglary,* whether in the daytime or nighttime, *committed by a person armed with a deadly weapon,* is burglary of the *first degree.* All other kinds of burglary are of the second degree." (Former CALJIC 202 (Rev.); now CALJIC No. 14.51.) (Italics added.) The jury was also instructed substantially in accordance with Penal Code section 1097, that if the jury was convinced beyond a reasonable doubt that defendant had committed a burglary, but a reasonable doubt existed in which degree he was guilty, he could be convicted only of the lesser degree.

Defendant points out—and properly—that there was no evidence to support the court's reference to the nighttime burglary of "an inhabited

dwelling house." He argues that such reference was prejudicial in that it may have been the basis for the first degree verdict, particularly—defendant says—since the instruction first above quoted (that "[e]very person who enters *any structure such as is shown by the evidence in this case . . .*" is guilty of burglary) put the telephone booth within the definition of "structure." (Italics added.) Defendant appears to concede that the telephone booth was a "structure" within the meaning of the term "building" in Penal Code section 459 (see, fn. 1, *supra*), but suggests that the jury, having been properly told the booth was a "structure" within the law of burglary, might have inferred the court also meant it was "an inhabited dwelling house" within the instruction on first degree burglary.

It is error, of course, for the court to give an instruction which, although correctly stating a principle of law, has no application to the facts of the case at trial. Such error does not impel a reversal, however, unless it is affirmatively shown that the error has prejudiced the defendant (*People* v. *Eggers* (1947) 30 Cal.2d 676, 687 [185 P.2d 1]), and that there is a reasonable probability that, absent the error complained of, a verdict more favorable to defendant would have been reached. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]).

Although the court's reference to "an inhabited dwelling house" should have been omitted from the instruction,[2] we cannot accept the proposition that there was anything really misleading in the instructions on burglary. What defendant suggests is that the jury was unable, after hearing the evidence, to discriminate between a telephone booth and an inhabited dwelling house, an assumption which we will not indulge. Defendant overlooks the fact that the court's instructions on first degree burglary permitted the jury to return such a verdict upon the factual basis that defendant had committed the burglary while "armed with a deadly weapon," a hypothesis which finds support, albeit circumstantial, in the evidence.

### The General Charge of Burglary

The information upon which defendant went to trial charged him, as we have noted, with the general offense of burglary (Pen. Code, § 459) without specification either of degree or of the facts constituting such degree (Pen. Code, § 460). Notwithstanding the long established approval of this practice (see, *People* v. *Smith* (1902) 136 Cal. 207 [68 P. 702]) defendant argues on procedural due process grounds that an accused can be assured that the jury convicted him of the offense charged only if the

---

[2]The court also gave the usual cautionary instruction requiring the jury to disregard any instruction which applies to a state of facts which the jury finds does not exist. (Former CALJIC 8; now CALJIC No. 17.31.) It is presumed the jurors followed this instruction. (*People* v. *Isby* (1947) 30 Cal.2d 879, 896-897 [186 P.2d 405].)

accusatory pleading is required to state, and the jury is required to find, "which classification of first degree burglary the accused allegedly committed. . . ."

Pointing out that the telephone booth was not "inhabited," and that the judgment recites he was neither charged nor found to have been armed with a deadly weapon,[3] defendant predicates error on the absence of a pleading and verdict that he was armed.

The contention lacks merit. Due process requires neither such a pleading nor finding. ■ A charge of "burglary" includes burglary of whatever degree, and a first degree verdict thereon need not include the circumstances which constitute such degree. (See, *People* v. *Martin* (1954) 128 Cal.App. 2d 361, 364 [275 P.2d 635]; *People* v. *Collins* (1953) 117 Cal.App.2d 175, 180-181 [255 P.2d 59] (disapproved on other grounds in *People* v. *Elliot* (1960) 54 Cal.2d 498, 503-504 [6 Cal.Rptr. 753, 354 P.2d 225]); Witkin, Cal. Criminal Procedure (1963) § 200, p. 189, and § 538, pp. 549-550.)

Defendant's reliance on *People* v. *Taylor* (1966) 247 Cal.App.2d 11 [55 Cal.Rptr. 521], and on Penal Code section 969c adds no strength to the due process argument. The latter statute provides that "[w]henever a defendant is armed with a firearm or other weapon . . . the fact that the defendant was so armed *may* be charged in the accusatory pleading." (Italics added.) The *Taylor* case, in which the opinion makes a strong argument for the more specific pleading and finding suggested by defendant, does not take note of the fact that the permissive word "may" was substituted for "shall" by a 1957 amendment of section 969c. (See, *People* v. *Pond* (1959) 169 Cal.App.2d 547, 553 [337 P.2d 877].) *Taylor,* therefore, is no more than authority for the *desirability* of the specific pleading of facts establishing that the alleged burglary was of the first degree. (Cf. *In re McWhinney* (1968) 267 Cal.App.2d 691, 695 [73 Cal.Rptr. 291].)

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.

---

[3]This form of the judgment is consistent with the theory that his first degree conviction resulted from the jury's having impliedly found that he committed the burglary while armed with a deadly weapon. (See, *People* v. *Lewis* (1969) 274 Cal. App.2d 912, 922 [79 Cal.Rptr. 650].)