[Crim. No. 19667. Second Dist., Div. Five. Mar. 3, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
NED JOE MALER, Defendant and Appellant.

**COUNSEL**

Hollopeter & Terry and Charles Hollopeter for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**STEPHENS, Acting P. J.**—By information, defendant was charged in count I with arson (Pen. Code, § 448a), and in count II, with burning insured property with the intent to defraud an insurer (Pen. Code, § 548). Defendant pleaded not guilty, and his opening motion for dismissal was denied. The jury found defendant guilty on count I, and not guilty on count II. Defendant's motion for new trial was denied; proceedings were suspended, and defendant was granted five years' probation. Defendant appeals from the order granting probation.

At trial, it was established that defendant was part owner and the manager of Maler's Department Store (hereinafter, the store), a corporation in which defendant's mother held slightly more than 50 percent of the stock and defendant and defendant's sister each held slightly less than 25 percent of the stock. On the evening of August 29, 1969, the store sustained severe damage as a result of fire. Evidence adduced by the People showed the following: The store's business had not been good prior to the fire. The store filed a fire-insurance claim in the amount of $135,415.48 for this fire. Defendant had previously been associated with three other fires, on which claims had been filed with and paid by the two respective insurer companies: in May 1966, there was a small fire in the master bedroom of defendant's home, for which he filed a claim and was paid approximately $300; In July 1966, there was a larger fire in the master bedroom of defendant's home, for which he filed a claim for $21,000 and was paid $10,000 because of policy limitations; In October 1968, there was a fire in the store, for which the store filed a claim and was paid $6,657.53. In none of these prior fires was there an assignment of misconduct against defendant, nor is there presently any express assignment of misconduct in those prior fires. (Defendant objected to admission of this evidence on the ground that it was "offered to merely prove the disposition of the defendant to commit such acts . . . ," and offered to "stipulate that if it be proved that he set the fire that is charged . . . he [was] . . . willing to concede that . . . he did so with the intent of defrauding the insurance company." The evidence was admitted, however, on the ground that it tended to "show intent and motive on the part of the defendant.") Opinion testimony of three fire experts (a fire battalion chief, a fire captain, and a private fire investigator) was that the fire in question was the result of two independent fires having been set at different locations in the store. Defendant was the last person to leave the store on the evening of the fire. The testimony of defendant and of a store employee, George Lyons, established the following: At approximately 9:10 p.m. on the evening in question, after all of the other employees had left the store, defendant and Lyons conducted the customary closing procedure and left the store. Defendant and Lyons walked away together, talking, until it was noticed that defendant had carried a tape recorder from the store. Defendant and Lyons then returned to the store in order for defendant to return the recorder. Defendant entered the store, but Lyons waited outside. Defendant was in the store approximately three minutes before he rejoined Lyons, who awaited him. Defendant and Lyons then separated, with defendant going into a gas station to get his car, and Lyons going into a liquor store. Someone then called to Lyons that the store was on fire. Lyons ran to the store, saw the fire, and then ran to the street in order to find someone to summon the fire department, whereupon Lyons

observed defendant driving out of the gas station. After motioning defendant to him, Lyons told defendant that the store was on fire. Thereafter, both were present while the fire department extinguished the blaze.

Upon the People's resting their case, defendant moved for a judgment of acquittal (Pen. Code, § 1118.1) and the motion was denied.

The following evidence was adduced on defendant's behalf: Although business had been somewhat poor prior to this fire, assets of the store still exceeded liabilities by approximately $133,000, and since the store's business was seasonal, that period of poor business was not unexpected. Although the store had filed a fire insurance claim for $135,415.48, the extent of the store's fire insurance coverage was only $108,195.[1] None of the fires with which defendant had been associated previously was set by defendant, and in one of those fires (the second master-bedroom fire in 1966, for which defendant claimed $21,000 but was paid $10,000 because of limited coverage), the damage caused by that fire exceeded the insurance coverage by approximately $11,000. Opinion evidence of a criminalist was that although he believed the fire had been set, he believed that it had been set in one place, not two places. Although defendant was the last person to leave the store on the night of the fire, employee Lyons testified that as he waited outside the store while defendant returned the recorder, he could at all times see defendant through the store's glass door, and he did not see defendant set a fire.

Defendant's first contention on appeal is that the trial court committed reversible error in admitting evidence of prior fires. Specifically, defendant asserts that the admitted evidence of his association with prior fires was irrelevant; tended to show that he had a disposition to commit acts of arson; should not have been admitted on the issues of motive, intent, and knowledge because he had offered to stipulate "that if it once be proved he set such fire, he [would admit that he] did so with the intent of defrauding the insurance company"; and that it was prejudicial. We disagree.

California Evidence Code section 1101, subdivision (a), provides: "Except as provided in this section . . ., evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible

---

[1]Under the store's policy of fire insurance, the store was required to submit monthly inventory reports to the insurer. At the time of the fire here, the store was approximately three months' behind in submitting its reports, and in the last report that the store did submit, the value of the store's inventory was shown to be $108,195.

when offered to prove his conduct on a specified occasion." Section 1101, subdivision (b), however, adds the following qualification: "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts."

The Law Revision Commission comment to section 1101 explains that section 1101, subdivision (b), "codifies existing law. [Citations.]" One case which was existing law at the time section 1101 was enacted is *People* v. *Furgerson,* 209 Cal.App.2d 387, 390-391 [25 Cal.Rptr. 818]. In *Furgerson,* the defendant was the operator of a food market which had burned. The defendant was charged with arson and with burning insured property with intent to defraud the insurer. Evidence that the defendant had, on two prior occasions, received insurance recoveries as a result of fires was admitted at the defendant's trial. In upholding the admissibility of this evidence, the appellate court made the following statement: "The defendant was charged not only with setting fire to a building . . ., but also with setting fire to insured personal property with intent 'to injure or defraud the insurer,' . . . The evidence which showed the making of and recovery upon prior insurance claims was relevant to the issue of *intent* as proof of the fact that the reason the defendant set the instant fire was to collect on his insurance and thus injure or defraud his insurance carrier; he had recovered on other insurance claims after sustaining loss by fire and it is reasonable to infer from this fact that in setting the subject fire he intended to create a loss which would enable him to recover under an insurance claim he would make thereafter, that his *motive* in setting the fire was to recover on his insurance rather than for some other reason, such as to terminate his lease, or to spite his landlord. . . . The evidence objected to also was proof of a *mental state* respecting the ease of recovery upon an insurance claim, of the defendant's *familiarity* with the method of recovery, and of an acute consciousness that insurance benefits are a ready source of cash. The fact that the prior fires were not of incendiary origin did not establish that the evidence in question was irrelevant. (*People* v. *Miller,* 185 Cal.App.2d 59, 79 [8 Cal.Rptr. 91]; *People* v. *Miller, supra,* 41 Cal.App. 2d 252, 256 [106 P.2d 239]; *People* v. *Bragdon, supra,* 103 Cal.App. 20, 24 [283 P. 881].)" (Italics added.)

Just as in *Furgerson,* in each of the prior fires with which defendant here has been associated, an insurance claim had been filed; therefore, like *Furgerson,* we hold that the evidence of the prior fires was relevant to the issues of defendant's intent, motive, and knowledge ("familiarity with recovery").

Defendant asserts, however, that since he had offered that he would, in the event that he was convicted of arson (count I), stipulate that he committed the arson for the purpose of defrauding the insurer (count II), he had, in effect, removed the only possible basis (insurance) upon which the evidence of the prior fires might be relevant. Defendant, however, rests his assertion upon the premise that a consideration of insurance would be relevant only to count II (burning to defraud an insurer) and would not be relevant to count I (arson). Defendant's premise is erroneous. In *People* v. *Miller*, 185 Cal.App.2d 59 [8 Cal.Rptr. 91], the defendant was charged with arson, but was not charged with burning to defraud an insurer; however, in upholding the admissibility of evidence of a prior fire, the appellate court stated (at pp. 79-80): "The evidence in question was material to the relationship existing between the defendant and the fire adjustment company . . . . It shows the defendant's knowledge of a procedure which had proven effective in obtaining a satisfactory recovery under a fire insurance policy; . . . Evidence of his interest in the insurance . . . [was] material to the issue of *motive*. The evidence objected to was admissible under the rule heretofore stated. [Citations.]" (Italics added.) Therefore, the disputed evidence is relevant to the arson count, and since there was no offer of stipulation as to that count, that evidence was admissible in any event at least as to the arson count.

Defendant's final assertion in regard to the prior fires is that "the prejudicial effect of admitting the evidence of these . . . prior fires far outweighed the probative effect of such evidence [and] it is submitted that the court erred in not excluding the evidence of the . . . prior fires pursuant to the provisions of Evidence Code Section 352."

■ Evidence Code section 352 provides a trial judge with the discretion to exclude otherwise admissible evidence "if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issue, or of misleading the jury." We believe that this section applies to evidence that is admissible under Evidence Code section 1101, subdivision (b). (Cf. *People* v. *Beagle*, 6 Cal.3d 441, 451-453 [99 Cal.Rptr. 313, 492 P.2d 1].)
■ The Law Revision Commission comment to section 1101 states: "Section 1101 is concerned with [excluding] evidence of a person's character (i.e., his propensity or disposition to engage in a certain type of conduct) that is offered as a basis for an inference that he behaved in conformity with that character on a particular occasion." The protection afforded an accused by section 1101, subdivision (a), however, is subject to such a wide variety of exceptions (1101, subd. (b)) that "the true rule could be more realistically stated in the affirmative form: That evidence of [char-

acter] is admissible whenever it is relevant to a material issue, and that it should be excluded only where its sole purpose and effect is to show the defendant's bad moral character (disposition to commit crime). [Citations.]" (Witkin, Cal. Evidence (2d ed. 1966) p. 300.) As a consequence the admissibility of such evidence depends in effect "upon the answer to one simple question. Is this evidence in any way relevant to a fact in issue otherwise than by merely showing propensity?" (Stone, *Exclusion of Similar Fact Evidence,* 51 Harv.L.Rev. 988, 1004.) For this reason, an accused's best protection from the evil sought to be avoided by section 1101 lies in the trial judge's judicious exercise of the discretion granted to him by section 352. While we believe that the trial judge faced a close question in weighing the probative value of the prior fires evidence against the potential for prejudicing the jury, we are unable to say that his ruling to admit the evidence was an abuse of his discretion. Accordingly, we hold that the evidence pertaining to the fires was admissible under the authority of section 1101, subdivision (b).

█ Defendant's second contention relates to the following statement which the trial judge made to the jury during the trial: "Ladies and gentlemen, I am going to read to you at this time an instruction which you will receive at the conclusion of the evidence in this case as follows, and this is relevant to the evidence that will be coming in shortly, I believe: This evidence which you are about to hear *may tend to show that the defendant has committed a crime or crimes other than that for which he is on trial.* Such evidence is not received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes. Such evidence is to be received and may be considered by you for the limited purpose of determining if it tends to show a motive for the commission of the crime charged or the existence of the intent which is a necessary element for the crime charged. For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case, and you are not permitted to consider such evidence for any other purpose." (Italics added.) Specifically, defendant complains that "[i]n effect, the jury was informed by the court that [defendant] was already a criminal, i.e., [defendant] had committed prior crimes involving fires. . . ." In the court's final instructions to the jury, the court replaced the language to which defendant objects with the following language: "Evidence has been received tending to *connect* the defendant with fires other than that for which he is on trial." (Italics added.) Defendant, however, complains that this correction in the final instructions did not cure the alleged prejudice created by the judge's statement at trial. However, defendant made no assignment of error regarding it at the time the statement was made, and where "comments made by the court to which

objection now is made were not objected to at the time of trial . . . they may not be assigned as error on appeal." (*People* v. *Pacheco,* 220 Cal. App.2d 320, 326 [33 Cal.Rptr. 735].) In addition, even if we were to assume that an objection had been made, or was unnecessary, and even if we were to assume that the judge's comment had no application to the facts, we do not believe there was reversible error. ■ "It is error, of course, for the court to give an instruction which, although correctly stating a principle of law, has no application to the facts of the case at trial. Such error does not impel a reversal, however, unless it is affirmatively shown that the error had prejudiced the defendant [citations], and that there is a reasonable probability that, absent the error complained of, a verdict more favorable to defendant would have been reached. [Citation.]" (*People* v. *Nunez,* 7 Cal.App.3d 655, 662 [86 Cal.Rptr. 707].) ■ Here, the judge not only deleted his reference to "other crimes," he also instructed the jury that they were to consider "all the instructions as a whole and to regard each in the light of all the others"; that they were to consider the evidence relating to the prior fires for the limited purpose of determining intent, motive, and knowledge, and that "[w]hether some of the instructions will apply will depend upon your determination of the facts." For these reasons, we believe that any error, if there was any, was harmless, and that absent the alleged error complained of, a verdict more favorable to defendant would not have been reached. (*People* v. *Nunez, supra.*)

Defendant's third contention is that the court erred in ruling that the fire captain was qualified to give an expert opinion as to the source of the instant fire. Defendant asserts that since the fire captain had been a captain for less than one year, since many of the 140 fires which the captain had investigated during his career were rubbish fires, and since he had received only "slightly in excess of one week of formal training in the field of arson investigation," the captain was unqualified to testify as an expert witness. We find no merit in defendant's contention. ■ "It is almost the universal rule [,] strongly supported by both cases and learned treatises, that the trial court must be left to determine the qualifications of an expert [citations] and this determination will seldom, in the absence of a clear abuse of discretion, be reversed on appeal." (*People* v. *Murray,* 247 Cal. App.2d 730, 735 [56 Cal.Rptr. 21].) ■ "The qualifications of an expert witness are for the trial court [citation] and any question as to the degree of his knowledge goes to the weight of his testimony rather than as to its admissibility." (*People* v. *Penny,* 44 Cal.2d 861, 866 [285 P.2d 926].)

■ Defendant's final contention is that the evidence was insufficient as a matter of law to sustain his conviction and therefore that the court erred in denying his motion for a judgment of acquittal (Pen. Code,

§ 1118.1) and thereafter, his motion for a new trial. We disagree. Evidence was adduced by the People which tended to show, among other facts, that the store's business had been poor; that the store was insured; that the fire had been set; and that defendant had been the last person to leave the store on the night of the fire. Although this is circumstantial evidence, "[i]t is clear . . . that the lack of eyewitnesses and of direct evidence . . . do not by themselves render the finding of guilt invalid for the lack of evidentiary support. ▉ The People, of course, may rely on circumstantial evidence to connect the defendant with the commission of the crime charged and to establish beyond a reasonable doubt that he committed it. [Citations.] ▉ An appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.] ▉ The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. [Citation.]" *(People* v. *Reilly,* 3 Cal.3d 421, 424-425 [90 Cal.Rptr. 417, 475 P.2d 649].) ▉ We believe that the evidence adduced at defendant's trial constituted substantial evidence in support of the jury's verdict.

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.