[Crim. No. 35130. Second Dist., Div. Five. May 28, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT NEAL RANCE, Defendant and Appellant.

**COUNSEL**

Arjuna T. Saraydarian, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Vincent J. O'Neill, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ASHBY, J.**—By jury trial appellant was convicted of burglary, rape, sodomy, and oral copulation. Proceedings were suspended and he was committed to the Department of Health as a mentally disordered sex offender for a maximum of eight years.

After 10 p.m. on October 26, 1978, appellant gained entry to the apartment of Ruth S. by means of a ruse involving asking for a certain person and then asking to use the telephone directory and to make a

phone call. Once inside, he forced her to engage in the sex acts involved.

For the purpose of proving a common scheme or plan, intent, motive, and identity, the prosecution introduced evidence of a similar offense against Martha H. on October 30, 1975. Appellant concedes the "extreme similarity" of the uncharged offense, and it is unnecessary to detail the numerous similarities here.

Additional evidence overwhelmingly establishing appellant's guilt included Miss S.'s injuries, appellant's fingerprints on the bottle of lubrication he used for the sex acts, and appellant's flight and attempt to dispose of evidence when the police went to his home the next day to arrest him.

### Contentions Concerning the Prior Incident

Conceding the extreme similarity of the prior offense and its apparent admissibility under Evidence Code section 1101, subdivision (b), appellant nevertheless argues the prior incident should have been excluded from evidence as being "unnecessarily cumulative, and unduly prejudicial," citing Evidence Code section 352. Appellant's argument seems to reflect a misunderstanding of the meaning of "prejudice" when a court determines the admissibility of uncharged offenses. The danger in the admission into evidence of a defendant's other crimes is that where such evidence has slight or dubious relevance to proper issues under Evidence Code section 1101, subdivision (b), the jury may erroneously treat it as evidence of bad character or propensity to crime. (Evid. Code, § 1101, subd. (a); *People v. Gibson* (1976) 56 Cal.App.3d 119, 128, 130 [128 Cal.Rptr. 302].) Thus, when such evidence is offered under section 1101, subdivision (b), the court engages in a weighing of its probative value against this potential for prejudice. (*Id.*, at pp. 127-128, 131; *People v. Schader* (1969) 71 Cal.2d 761, 774-775 [80 Cal.Rptr. 1, 457 P.2d 841]; *People v. Thomas* (1978) 20 Cal.3d 457, 466-467 [143 Cal.Rptr. 215, 573 P.2d 433]; *People v. Haslouer* (1978) 79 Cal.App. 3d 818, 825, 828 [145 Cal.Rptr. 234].)

■ However, when the evidence shows a common scheme or plan and the similarities between the two offenses are so numerous and distinctive that the evidence has great probative value, the fact that it leads inexorably to the logical conclusion that if the defendant committed the one crime he also committed the other, does not constitute

"prejudice" but rather proper overwhelming proof of guilt. (*People* v. *Haslouer, supra*, 79 Cal.App.3d at pp. 824-829.) There was no abuse of discretion by the trial court in admitting the evidence in this case.

Appellant next contends the court erred in admitting into evidence certain statements appellant made to Miss H. She related that after appellant was in her apartment he "grabbed my arm and he told me not to scream or he would blow my fucking head off." He told her he had a gun. He then "led me over to my bed and said that he was just going to wait for his friend to come. . . . [¶] He said that he had just gotten out of prison and that the people that were coming to get him were responsible in some way for him going there, and that he had dope in his car, and he was going to set them up and kill them." Miss H. was terrified by these statements. "He kept telling me, he told me that he would shoot me, and he was going to shoot those other people, I—I assumed he would do it to me, too."

Appellant argues that the portion of his statements relating to prison and dope were irrelevant or should have been excluded under Evidence Code section 352. ■ The trial court properly denied appellant's request to exclude this evidence. The references to prison and dope were crucial and necessary parts of the threats made by appellant. They made his threats more intimidating and were highly relevant to the victim's fear and lack of consent, as well as to appellant's intent to use force to overcome any resistance. The court did not err in concluding the probative value exceeded the prejudicial effect.

Appellant made a similar statement to Miss S. Prior to leaving her apartment "he said he was going to Santa Maria for some drug deal or something, and if he got picked up on the way there that he had friends who would hurt me, he said, he had friends around if I reported this to anybody, he would have his friends hurt me. And he said, you know, don't tell your boyfriend, or, you know, because—he just said 'Don't tell anybody.'" Miss S. thought appellant was going to kill her. Appellant argues the portion of this threat referring to a drug deal should have been excluded as irrelevant or under section 352. ■ But here, too, the reference to drugs was an inherent part of his threat which made the threat more credible. Although the statement came after the sex acts rather than before, a defendant's threat to harm a witness if the crime is reported is highly relevant evidence disclosing consciousness of guilt. (See *People* v. *Slocum* (1975) 52 Cal.App.3d 867, 887 [125 Cal. Rptr. 442].) We find no abuse of discretion.

Appellant next contends the court erroneously instructed the jury at the time of Miss H.'s testimony. Appellant requested the trial court to instruct the jury, *prior* to their hearing her testimony, as to the limited purposes for which it was admissible. The court granted appellant's request, and started to explain to the jury, "Ladies and gentlemen, it is my understanding that the witness, Miss [H.], will relate to you an experience that she had with the defendant, similar to that which was experienced by the witness, Ruth [S.]." Appellant objected that "it is improper comment on the witness' possible testimony." ██ We find no merit whatsoever to appellant's argument that the court erred. As the trial court explained to appellant's counsel, "I have to, I think, indicate the general nature of the testimony of this witness in order to make the point I am about to make for the jury." The court then instructed the jury on Evidence Code section 1101. It was appellant who requested that the instruction be given prior to the testimony, and thus the court was required to make some very general introductory statement. The statement did not imply to the jury, as appellant asserts, that the judge "believed that the defendant had committed an identical crime in the past and must be guilty of the crime charged."[1]

Finally, appellant contends the prosecutor committed misconduct in asking a certain question of Miss H. concerning the similarity of the two crimes. After her experience, Miss H. became a volunteer for a rape crisis center. In that capacity she interviewed Miss S. at the hospital the day after the S. crimes. The prosecutor asked:

"Q. My question is: Did you ever tell Ruth [S.] anything like, 'Gee, it looks like the same guy did this to you that did this to me,' or anything like that?

"A. That it sounded similar, very similar.

"[Counsel for appellant]: Objection; hearsay. Move to strike.

"THE COURT: That may go out. The jury will disregard it."

---

[1]Appellant's contention that another remark of the judge indicated the judge's personal belief in appellant's guilt is even more frivolous. The judge made a slip of the tongue in reading the information to the jury, but immediately corrected himself: "[Explaining the charge of burglary in count I] Now, there was not an intent to commit theft, as the first count charges, but there was an intent as alleged, I mean, it is alleged that there was an intent to commit rape,—that is Count I."

■ Assuming the answer to this question was not admissible, it is clear that no different result would have been reached had the prosecutor not asked it. (*People* v. *Beivelman* (1968) 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913]; see also *People* v. *Bolton* (1979) 23 Cal. 3d 208, 214 [152 Cal.Rptr. 141, 589 P.2d 396].) The answer to the question only slightly bolstered the prosecution's argument that the two crimes were similar, which was overwhelmingly shown by far more direct means.

### UNAVAILABILITY OF WITNESS

Officer Zerbe, the first officer to respond to Miss S.'s apartment when she called the police immediately after the crime, was not a witness at trial because he had moved to Oregon. Appellant contends Zerbe was a material witness whose testimony might have been favorable to appellant, that the prosecution should be held accountable for Zerbe's absence, and that the trial court should have granted appellant's motion to dismiss. There is no merit to this contention.

The crime occurred October 26, 1978. Appellant made a motion for pretrial discovery on December 29, 1978, which was granted on January 5, 1979. Trial was conducted March 22 to March 27, 1979.

According to Officer Fitzmorris, who arrived at Miss S.'s apartment about 1 a.m. to collect evidence, and who did testify at trial, Officer Zerbe had obtained a new job and had moved to Oregon about one and a half months prior to trial. The prosecutor stated to the court that he had only learned during the week prior to trial that Officer Zerbe had moved, when he inquired of another officer why the subpoena had not been served on Zerbe. Zerbe's name and his arrest report had been provided to the defense upon compliance with the first discovery order. The prosecutor did not include Zerbe on the list of witnesses he intended to call, which was submitted to defense counsel the week prior to trial.

Appellant suggested below and reargues on appeal that the prosecution had a duty to keep track of Officer Zerbe, to learn of his intended move and do something prior to his leaving the state, or at least to notify the defense as soon as learning of his absence and provide the defense with his new address if possible, prior to trial. Appellant cites no authority which supports his contention. ■ Generally, it is not the duty of the prosecution to produce or to keep track of witnesses the defendant may later wish to have testify. An exception has been made

in the case of police informants whose exact identity and whereabouts the police keep confidential until disclosure is required (*Bellizzi* v. *Superior Court* (1974) 12 Cal.3d 33, 36-37 [115 Cal.Rptr. 52, 524 P.2d 148]), but this rule does not apply to other types of witnesses. (*Id.*, at p. 37; *People* v. *Hernandez* (1978) 84 Cal.App.3d 408, 411 [148 Cal. Rptr. 567]; *People* v. *Flores* (1976) 62 Cal.App.3d Supp. 19, 23 [133 Cal.Rptr. 759].) In these other cases, only some impropriety on the People's part which makes the witness unavailable may result in dismissal if the defendant would otherwise be deprived of a fair trial. (See *People* v. *Hernandez, supra*, 84 Cal.App.3d 408; *People* v. *Mejia* (1976) 57 Cal.App.3d 574, 579-580 [129 Cal.Rptr. 192]; *In re Jesus B.* (1977) 75 Cal.App.3d 444, 449-450 [142 Cal.Rptr. 197].)

Here Officer Zerbe was not a confidential informant nor did the People in any way bring about his absence. His identity and (business) address were apparent to the defense from compliance with the original discovery request. From that time until the time of trial the defense was just as capable as the prosecution of keeping track of his whereabouts. Appellant was not entitled to a dismissal because of Zerbe's absence.[2]

## Opinion Evidence

Appellant contends the trial court abused its discretion in permitting the emergency room nurse, Alexandra Petak, to testify that in her opinion Miss S. had been "physically violated by bruises," i.e., "she had physical violence put upon her by someone else." He contends she was not qualified as an expert to render such an opinion.

---

[2]So far as the record shows, Zerbe's possible testimony would have had only slight relevance and weight. Zerbe's arrest report described the victim as "upset" but "well in control of herself and very cooperative." Appellant asserts that this conflicted with the testimony of Officer Fitzmorris that when he observed Miss S. at her apartment about 1 a.m., she was nervous, her hands were shaking, her speech was halting, her voice was very soft, her breathing was irregular, she appeared very pale, her skin was clammy and cool, and in Officer Fitzmorris' opinion, based upon first aid training and experience interviewing crime victims, she appeared in danger of going into shock; and with the testimony of the emergency room nurse, who saw Miss S. between 1:45 and 3 a.m., that based upon the victim's trembling and extreme quiet she was in a state of emotional shock. Appellant contends Officer Zerbe's arrest report would have supported an inference that the victim had consented. Appellant's argument that Zerbe's arrest report is inconsistent with the other testimony is not persuasive. We also note that Zerbe had never done a rape investigation before. Of course, the other evidence of the victim's lack of consent was overwhelming.

The trial court's determination of the qualifications of an expert will seldom be set aside. (*People* v. *Maler* (1972) 23 Cal.App.3d 973, 982 [100 Cal.Rptr. 650].) Most questions as to the degree of the expert's knowledge go to the weight rather than admissibility of the testimony. (*Id.*)

Here the witness had been a registered nurse for seven and a half years, and prior to working in the emergency room at Cottage Hospital she worked two winters in the emergency room clinic at UC Davis Medical Center. She took care of all kinds of patients who came through the door, including trauma victims.

■ The trial court could reasonably conclude that even though she was not a medical doctor she had sufficient experience in observing wounds and bruises of victims of trauma to be capable of rendering an opinion that violence had been inflicted upon Miss S. We find no abuse of discretion.

SENTENCE

Appellant was committed to the Department of Health as a mentally disordered sex offender. (Welf. & Inst. Code, § 6316.) Pursuant to Welfare and Institutions Code section 6316.1, the court calculated the maximum term of commitment as eight years, determined as follows: Five years upper term for rape, two additional years consecutive sentence for oral copulation and sodomy, and one additional year for prior felony conviction. The court assumed a concurrent upper term of four years for burglary.

If appellant had been sentenced to state prison, the sentence for burglary would have to be stayed in order to comply with Penal Code section 654. (*People* v. *Hicks* (1965) 63 Cal.2d 764, 765 [48 Cal.Rptr. 139, 408 P.2d 747].)[3]

■ However, no modification of the judgment is necessary. Appellant was not sentenced to state prison, and the theoretical correction required by Penal Code section 654 does not change the maximum term of the commitment. If, in the future, appellant is found not amenable to treatment and is returned to court for sentencing, the court will presumably comply with section 654 at that time.

---

[3]Multiple punishment for the sex offenses would be proper, however. (*People* v. *Perez* (1979) 23 Cal.3d 545, 552-554 [153 Cal.Rptr. 40, 591 P.2d 63].)

Appellant was given credit for 182 days of pretrial custody. He contends he should have been granted additional credit for good time/work time. ■ Under *People* v. *Sage* (1980) 26 Cal.3d 498, 507 [162 Cal.Rptr. 450, 606 P.2d 757], appellant is entitled to such credit if earned, but he must first seek relief through the administrative authorities.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.