[No. B072907. Second Dist., Div. Seven. Jan. 24, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES R. GODWIN, Defendant and Appellant.

**COUNSEL**

Jeanne Keevan-Lynch, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Pamela C. Hamanaka and Molly J. Steber, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

LILLIE, P. J.—James R. Godwin appeals from judgment entered following a jury trial in which he was convicted of possession of a destructive device

or explosive with the intent to injure, intimidate, or terrify any person or with the intent to wrongfully injure or destroy any property (Pen. Code, § 12303.3). He contends the trial court committed prejudicial instructional error.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

On February 5, 1990, at approximately 5:20 p.m., Mark Cano was walking in the area of the Mar Vista public library when he heard a very loud explosion. He felt the ground vibrate and believed he felt shrapnel flying around. He looked over to his left side and saw a blue van approximately 45 to 50 feet from him, parked directly behind the library, with smoke coming out of it and defendant stumbling out. Cano walked over to the van, helped defendant to the ground and asked him if he needed help. Defendant had a severe wound on the back of his neck and his arm and did not respond to any questions Cano asked. The inside of the van was smokey and there was a lot of trash and blood, and a hole in the side of the van through which he could see daylight. When Cano looked at the outside of the van, he saw a hole blown out with a piece of metal hanging out. This piece of metal appeared to have forced its way through the body of the van. Defendant was transported to the hospital.

Los Angeles Police Officer John Robert Mattingly went to Brotman Memorial Hospital where he spoke to defendant. Defendant's arm was bandaged, the back of his neck was either cut or burned and the smell of sulphur was on defendant's clothes. When Mattingly asked defendant what had happened, defendant stated he was lying in the van behind the library reading a book when he heard a noise and felt pain in his arm and neck. When Mattingly asked defendant if he was saying that someone threw a bomb into the van, defendant "began to get kind of terrified" and said, "I'm so depressed. I made $40,000 a year as an ordnance engineer. Now I'm on food stamps. I'm just tired of freezing at night and going hungry during the day. . . . I tried to commit suicide. I exploded the pipe bomb." Defendant explained that he took a two-and-one-half by six-inch pipe and filled it with three hundred fifty matches, put end caps on the galvanized pipe, drilled two holes in one of the ends of the pipe and ultimately ran the wire to his van's battery. He had a bridge detonator in the pipe that would detonate the match heads. He said that about 25 years ago he "did it" out in the desert and "it worked." When Mattingly was at the Mar Vista library, he observed that the van was approximately 10 or 15 feet from the back of the library.

In his defense, defendant testified he "pulled this stunt to get out of the situation [he] was in." He had to get into an institutional situation where

there would be "no accessible record of it." He wanted to go to the Veterans' Hospital for 30 to 60 days where he could recover from his "present posture." Veterans' Hospital never releases any information and it has an employment service for homeless veterans; he is a veteran; he needed a place where he could eat, sleep and recover from the situation; he needed a telephone, an address and a place where he could receive messages. One cannot just go to Veterans Hospital and say, "I need a place to hang out. . . . So something that was dramatic was required to get in there." Defendant had materials on hand to make something that would look like a bomb, make a loud noise, lots of smoke, create a big scene but would not actually hurt anyone or anything as long as he set it off inside of his van. After the loud noise, defendant expected that everyone would run out of the library and open the side door of the van; he was supposed to be totally uninjured, possibly with a burn on his neck, that was all he thought would happen. The fire station was two blocks away and he thought the paramedics would get there first and take him to Veterans' Hospital with a possible concussion. If he generated any police problems, he would handle that later.

Defendant testified about what went wrong with the explosive device: the end cap on the container broke and pieces flew everywhere; that was not supposed to happen; the top was just supposed to blow off the end of the pipe and bounce around; never in a million years did he think it would fracture, but it did; it went off a lot louder than he thought it would; he was injured more seriously than he planned. Defendant testified he did not tell the detective that he contemplated suicide; the wires led from the pipe to the van's battery monitor and ultimately to the van's battery; he did not believe that his van was punctured from the force of the explosion of the pipe; he had been an ordnance engineer, an engineer who works with explosives; his specialty was timing and ignitions; there is a possibility of danger in any kind of an explosion, even a minor cherry bomb.

The jury was instructed, inter alia, that Godwin was charged in count 1 of the information with having violated Penal Code section 12303.3, a felony, and that "[e]very person who possesses, explodes, ignites or attempts to explode or ignite any destructive device or any explosive with the intent to injure, intimidate, or terrify any person or with the intent to wrongfully injure or destroy any property, is guilty of a violation of Penal Code section 12303.3. [¶] In order to prove such crime has been committed, each of the following elements must be proved: 1. The defendant possessed, exploded or ignited or attempted to explode or ignite any destructive device or explosive. 2. The defendant had the specific intent to wrongfully injure, intimidate or

terrify any person; or the defendant had the specific intent to wrongfully injure or destroy any property."[1]

During jury deliberations the court received a question from the jury asking for a clarification of the word, "wrongfully." The court stated it intended to tell the jury that "wrongful" meant "without legal justification." When the court asked defendant if the definition appeared acceptable, defendant stated, "Yes, I don't have a better one to offer."

### Jury Instructions re "Wrongfully"

■ Appellant contends that the trial court prejudicially erred because it misdirected the jury as to the meaning of the word "wrongfully." Appellant contends the jury should have been instructed that "wrongfully" required the intent to injure or destroy the property of another or an intent to infringe upon the legal rights of another. Appellant's contention is well taken.

While we note that prior to instructing the jury, the court asked defendant if the definition was acceptable and defendant stated it was, appellate courts may review any instruction given even though no objection was made if a substantial right of the defendant is affected. (See *People* v. *Harris* (1981) 28 Cal.3d 935, 956 [171 Cal.Rptr. 679, 623 P.2d 240].)

We agree that the court's instruction that "wrongfully" meant "without legal justification" permitted the jury to convict the defendant if it found defendant only intended to injure himself or only intended to injure his own personal property.

Penal Code section 12303.3 provides: "Every person who possesses, explodes, ignites, or attempts to explode or ignite any destructive device or any explosive with intent to injure, intimidate, or terrify any person, or with intent to wrongfully injure or destroy any property, is guilty of a felony, and shall be punished by imprisonment in the state prison for a period of three, five or seven years."

While the statute seems to make it a crime to intend to injure *any* person or destroy *any* property, we cannot look to just these words to ascertain the meaning of the statute. There appear to be no California cases discussing what is meant by the term "wrongfully injure or destroy any property" within the context of Penal Code section 12303.3, but other similar statutes criminalize the destruction of one's own property only if there is an intent to defraud or injure another person or another person's property. Penal Code section 451, subdivision (d), provides that arson is a felony but that "arson of

---

[1]The jury was instructed the defendant had to have intended to "wrongfully" injure any person, but the statute provides a defendant had to have intended to injure, intimidate or terrify any person.

property does not include one burning or causing to be burned his or her own personal property unless there is an intent to defraud or there is injury to another person or another person's structure, forest land, or property." (See *People* v. *Foster* (1981) 114 Cal.App.3d 421, 430-431 [170 Cal.Rptr. 597].)

Similarly, there appear to be no California cases discussing the term "any person" within the context of Penal Code section 12303.3.[2] The court in *People* v. *Poulin* (1972) 27 Cal.App.3d 54, 59-61 [103 Cal.Rptr. 623], however, in determining that the term, "great bodily injury" within the meaning of Penal Code section 12310 was not unconstitutionally vague, noted in dictum that the term "any person" meant *another* person. Support for this position is found in the new 1993 jury instructions, CALJIC No. 12.55.6 and CALJIC No. 12.55.7, which first track the statutory language including the term "to any person" and then require in pertinent part that to prove violations the explosion of the destructive device must have caused another person to suffer bodily injury, great bodily injury, mayhem or death.

The language of Penal Code section 12303.3 provides additional support for the conclusion that "any person" could not include the defendant himself. The statute speaks of an intent to "injure, terrorize, or intimidate" any person. While it is possible to intend to injure oneself, it is not possible to terrorize or intimidate oneself. The fact that the Legislature used the same term "any person" to define all three purposes suggests it was contemplating that the term embrace a single class of persons who could conceivably be the target of any of those three acts, that is, someone other than the defendant.

While we are aware of the vast destructive possibilities of a bomb, that often times its maker loses control over the time of its detonation and that it may wreak enormous havoc on persons and property (see *People* v. *Morse* (1992) 2 Cal.App.4th 620 [3 Cal.Rptr.2d 343]), the Legislature has implemented a network of statutes prohibiting certain conduct involving destructive devices. There are statutes which prohibit the possession of such devices (Pen. Code, § 12303); the carrying or placement of devices on passenger vessels (Pen. Code, § 12303.1); the possession of devices in or near certain places (Pen. Code, § 12303.2); the sale or transportation of such devices (Pen. Code, § 12303.6); the explosion or attempt to explode devices with the intent to murder (Pen. Code, § 12308); and the explosion of such device causing varying degrees of bodily injury or murder (Pen. Code, §§ 12309 and 12310).

---

[2]On January 18, 1995, this court filed its unpublished opinion in *People* v. *Teroganesian* (1995) 31 Cal.App.4th 1534 [37 Cal.Rptr.2d 489], wherein we discussed the meaning of "any person" within the meaning of Penal Code section 12309. Following a request for publication pursuant to California Rules of Court, rule 978, the opinion was ordered published on Feburary 2, 1995.

We conclude that Penal Code section 12303.3 seeks to punish and thereby discourage possession or ignition of explosives which are intended to injure other people but don't succeed in injuring them, which intend to terrorize or intimidate other people but do not injure them, or to injure or destroy other persons' property. It is not aimed at imposing added punishment for the possession or ignition of devices intended solely to injure the perpetrator or his own property beyond what he would face for simple possession of those explosives (Pen. Code, § 12303) or possession on certain common carriers or vehicles (Pen. Code, § 12303.1) or possession in certain public places (Pen. Code, § 12303.2). The court prejudicially erred in its instruction to the jury.

## DISPOSITION[3]

The judgment is reversed.

Johnson, J., concurred.

**WOODS (Fred), J.,** Concurring and Dissenting.—I entirely concur with the analysis and conclusion of the majority that possession of a destructive device with the intent only to harm oneself or one's own property is not a violation of Penal Code section 12303.3. I further concur that the trial court's failure to so instruct the jury was prejudicial and requires a reversal of the section 12303.3 conviction. But the reversal should be conditional, not absolute, as ordered by the majority.

By finding appellant guilty of possessing a destructive device with the intent to injure, intimidate or terrify any person (Pen. Code, § 12303.3) the jury necessarily found him guilty of the lesser included offense of possessing a destructive device. (Pen. Code, § 12303; see *People* v. *Morse* (1992) 2 Cal.App.4th 620, 648 [3 Cal.Rptr.2d 343].) The instructional error, prejudicial to the section 12303.3 charge, did not affect the lesser included section 12303 offense.

Therefore the judgment should be conditionally reversed and remanded to the trial court with instructions to either set the matter for retrial or, if the district attorney so elects, to reinstate the conviction of Penal Code section 12303 and conduct a probation and sentence hearing on that conviction. (*People* v. *Jaramillo* (1976) 16 Cal.3d 752, 760 [129 Cal.Rptr. 306, 548 P.2d 706]; *People* v. *Riederer* (1990) 217 Cal.App.3d 829, 837 [266 Cal.Rptr. 355].)

A petition for a rehearing was denied February 16, 1995. Woods, J., was of the opinion that the petition should be granted. Respondent's petition for review by the Supreme Court was denied May 18, 1995. Baxter, J., George, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

[3]In view of our holding we do not discuss appellant's additional claims of error.